# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

MICHELE A. MARIANO,                   :
       Plaintiff,                  :
                      :
       v.                          :     C.A. No. 15-018ML
                      :
CAROLYN W. COLVIN, ACTING             :
COMMISSIONER OF SOCIAL SECURITY,      :
       Defendant.                  :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

       This matter is before the Court on the motion of Plaintiff Michele A. Mariano for reversal of the decision of the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits ("DIB") under 42 U.S.C. § 405(g).  Plaintiff contends that the Administrative Law Judge ("ALJ") failed properly to consider both the objective findings of her treating physician and her subjective complaints arising from fibromyalgia and therefore erred in finding her capable of performing a limited range of light work.  Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming the Commissioner's decision.  These motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the record, I find no legal error and that the ALJ's findings are sufficiently supported by substantial evidence.  Accordingly, I recommend that Plaintiff's Motion to Reverse the Defendant's Final Decision without a Remand for Rehearing or in the Alternative Reverse with a Remand for Rehearing (ECF No. 17) be DENIED and the Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 19) be GRANTED.

## I.   <u>Background</u>

Plaintiff has a seventh-grade education and functions intellectually in the borderline range; she was forty-eight years old on the alleged onset date, November 1, 2011.  Tr. 16, 23, 34, 466.  Her claimed impairments include fibromyalgia, tendinosis, lower back disc deterioration, insomnia, narrowing of the spine, previous thyroid cancer and impairments of the left shoulder and neck.  Tr. 153.  Prior to onset, she had been employed as a forklift driver and order picker at the same company for sixteen years.  Tr. 36-37, 143-47.  She initially stopped working in October 2011 on doctor's orders because of an employment-related repetitive-motion shoulder injury.  In connection with her worker's compensation claim, her treating physician was optimistic that she would be able to return to light duty, if not to her prior work.  Tr. 303, 310, 312.  However, in December 2011, Plaintiff reported that the pain had spread throughout her body and fibromyalgia was diagnosed.  Tr. 269-71.  She has not worked since.  In the early part of the period of alleged disability, her medical care was partly paid for by workers compensation insurance and partly through her employer's medical insurance.  When those sources ran dry, she accessed free care available at Thundermist Health Center.  Tr. 35.

In connection with this appeal, Plaintiff does not dispute either the ALJ's findings that thyroid cancer, reflux, sleep apnea and obesity are non-severe impairments or his conclusion that her mental impairments limit her to simple tasks and minimal social contact.  Neither the non-severe impairments nor the mental limitations will be discussed further in this report and recommendation.

### A.   Relevant Medical History

Plaintiff's shoulder injury was treated by Dr. Robert J. Fortuna, who diagnosed acromioclavicular joint sprain/left shoulder; on November 2, 2011, the day after her alleged

onset, he opined that she should be placed on light duty with no repetitive use of her upper left arm.  Tr. 312-13.  By the end of November, Dr. Fortuna opined that Plaintiff would be able to go back to work soon.  Tr. 310.  However, on December 1, 2011, Dr. Roman Klufas ordered an MRI of her cervical spine in connection with ongoing cervical and lumber spinal issues.  He diagnosed disc protrusions with stenosis, cord deformity, spondylitic change and neural foraminal narrowing.  Tr. 252-53.  A week later, on December 6, 2011, Dr. Keith Rafal, a physiatrist, evaluated Plaintiff and found tender points throughout her body, although he also found full motor strength in upper and lower extremities, a functional range of motion in her upper extremities, normal gait, and negative bilateral straight leg raise test.  Tr. 270.  Dr. Rafal diagnosed fibromyalgia, but did not opine that she could not work.  Id.  To the contrary, he noted, "She is a standup forklift driver, generally works 40 hours a week, and is now weaning back in to work."  Tr. 269.

Because of difficulties with her shoulder, Plaintiff's December 2011 attempt to return to work did not go well; as Dr. Fortuna wrote, "[s]he did attempt to go back to work and quickly got into some trouble with tenderness mostly laterally on the subacromial bursa with range of motion of that left shoulder."  Tr. 307.  A December 21, 2011, MRI of her shoulder showed supraspinatus and subscapularis tendinosis.  Tr. 250-51.  By January 3, 2012, Dr. Fortuna suggested that Plaintiff should look for a job other than forklift operator.  Tr. 306.

In January 2012, Plaintiff reported that her symptoms had improved with physical therapy.  Tr. 226-27.  She returned to Dr. Rafal, who concluded that she had positive tender points but that her gait was otherwise normal.  Tr. 227.  She also returned to her chiropractor, Dr. Aragao, who treated her three times during the period of alleged disability; he provided her with an "off work" note on February 16, 2012, but by March 13, 2012, found that she was

3

"responding favorably to treatment," and that her prognosis was "[g]ood."  Tr. 276-79, 294-95.

In March 2012, Plaintiff told Dr. Fortuna that she had not returned to work because no light duty

was available.  Tr. 302.  Also in March, Dr. Leonard Hubbard, orthopedist, performed an

examination; his objective findings were mostly normal, including that she was reporting pain

only in her left shoulder.  Tr. 504.  He opined that, while disabled from working as a forklift

operator because of the repetitive nature of the work, her prognosis for eventual resolution was

excellent.  Id.  Similarly in April and May 2012, Dr. Hubbard noted tenderness in the shoulder

with a full range of motion and no other pain swelling, back pain, numbness or tingling.  Tr. 503.

By June 2012, Plaintiff told her primary care physician, Dr. Frank D'Alessandro, that she was

"feeling well without any specific complaints."  Tr. 457.  In July, Dr. Hubbard noted continued

shoulder pain, but no other bone or joint pain, limb swelling, back pain, numbness or tingling;

Plaintiff told him that she had been looking for alternative work.  Tr. 502.  In August, Dr.

Hubbard noted that, "[a]t this time the patient is willing to return to work if light duty

accommodations can be found.  This would involve no lifting greater than ten pounds and no

driving a forklift."  Tr. 541.

At the end of August 2012, Plaintiff lost her health insurance and switched to

Thundermist Health Center.  Tr. 34-35, 478.  On October 2, 2012, Nurse Heidi Trayner of

Thundermist assessed Plaintiff and encouraged her to walk outside daily because it would help

with mood, weight and mobility.  Tr. 473.  At four appointments in December through July

2013, Nurse Trayner observed that Plaintiff had tenderness in her back and multiple paired

trigger points; she prescribed medication for fibromyalgia and pain.  Tr. 505-07, 508-10, 511-13,

542-44.  However, she also concluded Plaintiff was in no acute distress, and had no chronic

fatigue, neurological pain, musculoskeletal swelling, deformity or synovitis; she consistently found a normal range of motion in Plaintiff's extremities.  Id.

### B.       Opinion Evidence

On August 24, 2012, state agency physician Dr. Joseph Callaghan found that Plaintiff suffers from severe disorders affecting her muscles, ligaments, fascia and spine (fibromyalgia), in addition to a non-severe disorder of the thyroid gland.  Tr. 56-59.  Based on his record review, he opined that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand, walk or sit for six hours in an eight-hour workday; frequently climb ramps and stairs, balance, stoop, kneel and crouch; occasionally crawl or climb ladders, ropes or scaffolds; and should avoid concentrated exposure to hazards, with limits on reaching to the front, laterally and overhead on her left.  Tr. 61-63.  On December 3, 2012, state agency physician Dr. Meghana Karande reviewed Plaintiff's records on reconsideration, including her new allegation that she might have rheumatoid arthritis.  Tr. 70-73.  Dr. Karande concluded that rheumatoid arthritis was not established and affirmed Dr. Callaghan's opinion.  Tr. 74-78.

Plaintiff did not submit any opinion evidence from any source who opined that she was functionally limited so as to preclude all work for a period sufficient to support a finding of disability.[1]

## II.     Travel of the Case

Plaintiff filed her DIB application on February 21, 2012, alleging disability beginning on November 1, 2011.  Tr. 129-35.  Her application was denied initially and on reconsideration.  Tr. 86-91.  On August 27, 2013, the ALJ held a hearing at which Plaintiff, represented by counsel,

---

[1] The only treating provider to advise her to stop work without clarifying that the stoppage would be temporary was Dr. Aragao, the chiropractor, who opined on February 16, 2012, "off work until further notice," but provided no function-by-function analysis of her limitations.  Tr. 279.  However, within a month, he opined that her prognosis was good.  Tr. 294-95.  Plaintiff does not argue that Dr. Aragao's "off-work" note constitutes a treating opinion establishing disabling limitations.

and a vocational expert ("VE") appeared and testified.  Tr. 29-54.  On September 13, 2013, the

ALJ issued a decision finding that Plaintiff was not disabled.  Tr. 11-24.  The Appeals Council

denied Plaintiff's request for review, Tr. 1-4, rendering the ALJ's decision the final decision of

the Commissioner.  Plaintiff has exhausted her administrative remedies, and this case is now ripe

for judicial review.

## III.    The ALJ's Hearing and Decision

At the August 27, 2013, hearing, Plaintiff testified that she is able to drive, though not

far, and can put dishes in the dishwasher, do a little cooking, shower, watch television, put

laundry in the washer, sometimes go out to eat, receive visits from her mother and sit outside in

the sun.  Tr. 35, 43-44, 46.  However, her left shoulder has been painful and weak since her work

injury; she finds it hard to raise her left arm over her head or shoulder.  Tr. 38-39.  In addition,

she has pain in her neck, back, legs, feet and hips, as well as a pinched nerve on the right side of

her neck, which affects her right arm and hand.  Tr. 39, 48.  Nevertheless, she has declined

injections to treat the pain because she is afraid of needles and has not followed through on the

recommendation of her physicians that she should be more active.  Tr. 39-40, 45.  She has never

been hospitalized for pain.  Tr. 45.  When questioned by her own attorney, Plaintiff said that she

cannot sit or stand for more than fifteen to twenty minutes, that she must lie down for four hours

of an eight-hour work day and that she could not lift or carry more than five pounds.  Tr. 46-47,

53.  She said the pain feels as if someone is stabbing her, while the medications to treat it make

her sleepy.  Tr. 48-49.  The VE also testified; in response to a hypothetical based on the state

agency physicians' opinions, he opined that an individual so limited could not perform Plaintiff's

past work, but could perform various light-duty, unskilled jobs that are available in the Rhode

Island and national economies.  Tr. 51-52.

In his decision, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2011, her alleged onset date. Tr. 16. At Steps Two and Three, the ALJ found that Plaintiff had various severe impairments – borderline intellectual functioning, cervical degenerative disc disease with left upper extremity radiculopathy, left shoulder tendonitis, fibromyalgia, depression and reading disorder – but none that met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16-17. After review of the entire record, but accepting Plaintiff's testimony only insofar as it is consistent with the record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC")[2] to perform light work in that she can lift and carry twenty pounds occasionally and ten pounds frequently, and can sit, stand and walk six hours each in an eight-hour work day. Tr. 18. He also found additional limitations, including only occasional crawling, climbing or reaching at or above shoulder level with the non-dominant upper extremity, as well as limitations related to attention, concentration, persistence, the ability to perform any but simple tasks and little social interaction. Tr. 18. Based on the VE's testimony, the ALJ found that the RFC precluded the performance of any of Plaintiff's past relevant work, but that Plaintiff retained the ability to perform other jobs. Tr. 23. Thus, he concluded that Plaintiff was not disabled at any time from November 1, 2011, through the date of his decision. Tr. 24.

**IV.**   **Issues Presented**

Plaintiff's motion for reversal rests on two arguments: that the ALJ failed properly to consider either the objective findings or her subjective complaints regarding the symptoms of fibromyalgia and that the ALJ failed to make appropriate credibility findings.

---

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

V.    **Standard of Review**

The role of a district court in reviewing a decision of the Commissioner is limited because, although questions of law are reviewed *de novo*, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999) (quoting 42 U.S.C. § 405(g)). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's

8

complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).  Where the Court cannot discern the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow an explanation of the basis for the decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under Sentence Four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After

a Sentence Four remand, the Court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987).

With a Sentence Six remand, the parties must return to the Court after remand to file modified findings of fact.  Jackson, 99 F.3d at 1095 (citing Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991)).  The Court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

## VI.   **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

## A.       Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the

opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

A treating source who is not a licensed physician or psychologist[3] is not an "acceptable medical source."  20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006). Only an acceptable medical source may provide a medical opinion entitled to controlling weight to establish the existence of a medically determinable impairment.  SSR 06-03p, 2006 WL 2263437, at *2.  An "other source," such as a nurse practitioner or licensed clinical social worker, is not an "acceptable medical source," and cannot establish the existence of a medically determinable impairment, though such a source may provide insight into the severity of an impairment, including its impact on the individual's ability to function.  Id. at *2-3.  In general, an opinion from an "other source" is not entitled to the same deference as an opinion from a treating physician or psychologist.  Id. at *5.  Nevertheless, the opinions of medical sources who are not "acceptable medical sources" are important and should be evaluated on key issues such as severity and functional effects, along with other relevant evidence in the file.  Id. at *4.

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC, see 20 C.F.R. § 404.1545-1546, or the application of vocational factors because that ultimate determination is the province of the

---

[3] The regulations recognize other categories of providers as acceptable medical sources for certain impairments; for example, a licensed optometrist is acceptable for measurement of visual acuity and visual fields.  SSR 06-03p, 2006 WL 2263437, at *1.

Commissioner.  20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### B.  The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. § 416(i)(3).  If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability.  Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### C.    Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### D.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms

alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> 4. Treatment, other than medication, for relief of pain;
>
> 5. Functional restrictions; and
>
> 6. The claimant's daily activities.

Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  Guidance in assessing the credibility of the claimant's statement is provided by the Commissioner's 1996 ruling.  SSR 96-7p, 1996 WL 374186 (July 2, 1996). Credibility of an individual's statement about pain or other symptoms and their functional effects is the degree to which the statement can be believed and accepted as true; in making this determination, the ALJ must consider the entire case record and may find that all, only some, or none of an individual's allegations are credible.  Id. at *4.  One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the record.  Id. at *5-6.

## VII.   **Application and Analysis**

### A.   **Limitations Arising from Fibromyalgia**

Plaintiff's principal challenge to the ALJ's finding that she is not disabled is grounded in her argument that she was unambiguously diagnosed with fibromyalgia yet the ALJ ignored both the diagnosis and the limitations necessarily caused by the symptoms of fibromyalgia.  The argument fails for two reasons.  First, far from ignoring fibromyalgia, both the state agency physicians and the ALJ accepted the diagnosis and acknowledged it as severe at Step Two.  Tr. 16, 67, 74.  Second, the ALJ did not ignore the limitations created by the symptoms of fibromyalgia – to the contrary, his decision makes clear that he scoured the record for opinions regarding Plaintiff's functional limitations and properly considered all of them, including both those of the state agency reviewing physicians and also those of Plaintiff's treating physicians.  Tr. 19-22.  Put differently, the ALJ neither rejected nor ignored any opinion evidence regarding Plaintiff's limitations.  Rather, after a survey of the record, he correctly found that no provider had opined to functional limitations caused by fibromyalgia (or by any other impairment) serious enough to be disabling; that every treating provider who opined regarding the extent to which Plaintiff's limitations affected her ability to work ultimately concluded that Plaintiff could perform light duty work with limits on the use of her left arm; and that the state agency physicians concluded that she could perform light work with additional limitations (including limits on the use of her left arm).  Tr. 22.

The first leg of Plaintiff's attack on the ALJ's decision opens with the Social Security Administration's 2012 issuance of SSR 12-2p, which lays out the framework for how to evaluate disability claims based on fibromyalgia.  SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Plaintiff emphasizes that courts recognize fibromyalgia as a potentially disabling disease and that

an ALJ who relies on a medical opinion that "reject[s] a diagnosis of 'fibromyalgia' because it is a 'controversial term' and a 'number of qualified physicians feel that it is a non-entity'" will be reversed.  See Weiler v. Shalala, 922 F. Supp. 689, 693 (D. Mass. 1996).  She points out that she was examined by a well-known fibromyalgia specialist, Dr. Rafal, who diagnosed fibromyalgia.  Tr. 269-71.  All this is correct but beside the point – the ALJ ruled consistently with these propositions that fibromyalgia was established as a severe impairment and that it caused pain that resulted in functional limitations.  Tr. 16.

The second leg of Plaintiff's argument has a little more substance, although it too is lacking in merit.  She contends that the ALJ failed to discuss or consider Dr. Rafal's objective findings, thereby effectively omitting them from consideration, resulting in an RFC not based on the substantial evidence in the record.  Tr. 20.  To unpack this argument requires a thorough review of Dr. Rafal's report and treating notes from his two encounters with Plaintiff, as well as of the other treating records from the same time period.

Dr. Rafal's first encounter with Plaintiff is described in a report dated December 6, 2011.  Tr. 269-71.  On physical examination, he found positive tender points – some mild, some moderate – sufficient to support a diagnosis of fibromyalgia, but also found that "motor is 5/5 without asymmetry," that the range of motion was within functional limits (except for the cervical spine and right hip), that her gait was normal and that bilateral straight leg raise was negative.  Tr. 270.  He recommended diet changes, weight reduction, acupuncture and chiropractic treatment.  Tr. 271.  He noted Plaintiff's subjective descriptions of her symptoms: "Whole body hurts.  Average pain 7/10."  Tr. 270.  With respect to work, he observed simply, "[s]he is a standup forklift driver, generally works 40 hours a week, and is now weaning back in to work."  Tr. 269.  Nowhere in this initial report does he opine to any functional limitations or

express any opinion that Plaintiff is not able to return to work.  At the follow-up appointment on January 24, 2012, Plaintiff reported that she had made some of the recommended lifestyle changes but was unable to schedule acupuncture or cognitive behavioral treatment due to cost; she reported that neck pain had improved with physical therapy.  Tr. 226-27.  Like the initial report, Dr. Rafal's follow-up notes do not opine to any functional limitations or express any opinion that Plaintiff is not able to return to work.

Plaintiff never saw Dr. Rafal again.  However, she did continue treating with Dr. Fortuna, who had been dealing with her shoulder and spine.  On the day before her second appointment with Dr. Rafal, she saw Dr. Fortuna, who opined that she was improving and he expected to be able to release her to regular work activity soon.  Tr. 304.  When she saw Dr. Fortuna in February and March 2012, he performed a physical examination and opined that Plaintiff was capable of working at "light duty work with restrictions."  Tr. 302-03.  And in June 2012, Plaintiff told Dr. D'Alessandro that she was "feeling well without any specific complaints."  Tr. 456-57.  Finally, in August 2012, the orthopedist, Dr. Hubbard, released the claimant to light duty, with no lifting over ten pounds and no forklift operation.  Tr. 541.

Read with these record references in mind, Plaintiff's plaint that the ALJ ignored Dr. Rafal's objective findings is unavailing.  Far from ignoring Dr. Rafal, the ALJ's decision carefully sets out Dr. Rafal's observations, including his objective findings about tender points and range of motion; the ALJ also correctly notes the lack of any function-by-function assessment by any treating physician.  Tr. 20, 22.  With nothing to consider from Dr. Rafal, the ALJ properly afforded significant probative value to the state agency physicians, who did opine to exertional, postural, manipulative and environmental limitations arising from the objective

18

findings in the record.  Tr. 22.  All of these limitations were incorporated by the ALJ into his

RFC.  See Tr. 61-65, 76-80.

The potentially material aspect of Dr. Rafal's report that the ALJ omitted from his

decision is Dr. Rafal's reference to Plaintiff's subjective report that she experienced pain as

"[a]verage pain 7/10."  See Tr. 20, 270.  However, this pain report is based entirely on the

patient's subjective perception of pain, which may be discounted if Plaintiff's credibility is

discounted, as the ALJ properly did here.  See Peters v. Colvin, No. CV 14-11764-WGY, 2015

WL 5610815, at *5-6 (D. Mass. Sept. 23, 2015) (no error in hearing officer's rejection of

testimony regarding pain of up to ten on scale of ten in light of contradictory evidence that

claimant drove short distances, did some cooking and cared for children); DeBlois v. Astrue, No.

CIV.07-11685-DPW, 2008 WL 2484836, at *9-10 (D. Mass. June 13, 2008) (ALJ may discount

pain report to treating physicians if it is inconsistent with other evidence of record; ALJ's finding

of no disability affirmed despite pain reports of up to eight on scale to ten).  The Act itself

provides that an individual's statement as to her experience of pain is not, by itself, conclusive of

disability.  42 U.S.C. § 423(d)(5)(A).  In any event, the failure to refer to this aspect of Dr.

Rafal's report is not error – "[a]n ALJ is not required to expressly refer to each document in the

record, piece-by-piece."  Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990

WL 152336, at *1 (1st Cir. Sept. 11, 1990) (per curiam); see N.L.R.B. v. Beverly Enters.-Mass.,

Inc., 174 F.3d 13, 26 (1st Cir. 1999) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party"); Konuch, 2012

WL 5032667, at *7, n.13 ("an ALJ is not required to discuss every item of evidence in the

record").

Based on the foregoing, I find that Plaintiff is simply wrong in contending that the ALJ erred either in failing to accept the diagnosis of fibromyalgia or in failing properly to credit Dr. Rafal's findings. Her argument seems rooted in the mistaken belief that the symptoms and signs of fibromyalgia are *per se* disabling. The record makes plain that, from the alleged onset of disability, Plaintiff's treating physicians consistently opined that she either could perform light work with restrictions or would soon be able to return to light work with restrictions. <u>See</u> Tr. 302, 307, 502, 539, 540. These treating opinions align with the ALJ's RFC finding that Plaintiff could perform light work with restrictions. I find no error.

### B.     Credibility

With no medical source opining to disabling limitations, Plaintiff is entirely reliant on her subjective claim made during her testimony in connection with this application that she must lie down for four hours out of every eight-hour work day. Tr. 46-47, 49. The VE confirmed that such a limitation would be job preclusive. Tr. 52-53. Thus, the viability of the ALJ's adverse credibility finding is pivotal to the outcome of her appeal. She claims that the ALJ erred in rejecting her testimony that she needs to lie down for four of every eight hours because her testimony is consistent with the nature of fibromyalgia; she also contends that the ALJ inaccurately summarized her activities of daily living and that this error tainted his credibility finding. Neither argument is persuasive.

This Court's analysis must begin with the well-settled proposition that judicial review of the ALJ's credibility determination is performed with due deference to the ALJ as "the individual optimally positioned to observe and assess witness credibility." <u>Adams v. Chater</u>, 93 F.3d 712, 715 (10th Cir. 1996); <u>see</u> <u>Cruz v. Astrue</u>, No. CA 11-638M, 2013 WL 795063, at *16 (D.R.I. Feb. 12, 2013), <u>report and recommendation adopted</u>, 2013 WL 802986 (D.R.I. Mar. 4,

2013) ("Court is mindful of the need to tread softly, because '[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.'") (quoting Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)); Sheffield v. Callahan, 9 F. Supp. 2d 75, 80 (D. Mass. 1998) (deference required because only ALJ is able to evaluate claimant's demeanor at the hearing). Nevertheless, when the disability claim is based on pain caused by an impairment as fibromyalgia, "[a]n ALJ is required to investigate 'all avenues presented that relate to subjective complaints.'" Bowden v. Astrue, No. CA 11-84 DLM, 2012 WL 1999469, at *10 (D.R.I. June 4, 2012) (quoting Avery, 797 F.2d at 28); see Charpentier v. Colvin, C.A. No. 12-312 S, 2014 WL 575724, at *13 (D.R.I. Feb. 11, 2014) (in fibromyalgia cases, credibility determination is particularly important because of subjective nature of pain). On the other hand, the mere fact that pain is experienced subjectively does not render all testimony regarding pain *per se* credible. Poulin v. Colvin, No. 14-102, 2015 WL 1809194, at *4 (D. Me. Apr. 21, 2015) (acceptance of fibromyalgia as a severe impairment does not oblige ALJ to accept as credible claimant's testimony about severity of pain); Anderson v. Apfel, 100 F. Supp. 2d 1278, 1290 (D. Kan. 2000) (error to reject as credible claimant's alleged need to lie down after physical activity when testimony is consistent with treating physician's assessments and medical record supports testimony).

In this Circuit, Avery lays out the factors to consider in evaluating a claim of disability based on pain; they include the nature (including its location, onset, duration, frequency and radiation) and intensity of the pain, what precipitates or aggravates it, the prescribed treatment (including medication), the functional restrictions caused by the pain and the claimant's daily activities. 797 F.2d at 29. Consistently, SSR 12-2p prescribes the method for evaluation of the credibility of the claimant's statements regarding symptoms and functional limitations when

fibromyalgia has been established.  2012 WL 3104869, at *4-5.  It provides that, if objective medical evidence does not substantiate the person's statements about the intensity, persistence and functionally limited effects, all of the evidence in the record must be evaluated, including the claimant's daily activities, medications or other treatment, as well as the nature and frequency of the person's attempts to obtain medical treatment.  Id.  Similarly, Social Security Ruling 96-7p directs adjudicators to consider the entire case record, making clear the individual's statements about the intensity and persistence of pain or the effect of pain on the ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.  SSR 96-7p, 1996 WL 374186, at *1.

Consistent with this guidance, the ALJ properly based his finding that Plaintiff's testimony establishing extreme limitations was not credible on his review of the entire record, drawing on an array of record-based factors as described in his decision.  Tr. 22.  Specifically, he first compared Plaintiff's testimony to what she reported to her treating sources.  Focusing on her claim at the hearing that she needs to lie down for four hours out of every eight, Tr. 47, he correctly noted that this complaint was never made to any physician nor did any physician ever make such a recommendation nor did any physical examination yield findings supporting such a level of debilitation.  Tr. 22.  The ALJ accurately observed, as Plaintiff concedes, that several of her providers suggested that she should increase activity and exercise.  Tr. 22, 39-40; see Tr. 302 ("she is continuing with a home exercise program as well as stretching exercises"); Tr. 473 ("I encouraged her to get out and walk daily").  The second foundation for the adverse credibility finding was Plaintiff's failure to accept recommended treatment – for example, Plaintiff refused cortisone injections to treat the pain in her neck and shoulder because she was "afraid of needles."  Tr. 22, 45.  It is well settled that an ALJ may infer that symptoms are not as severe as

alleged when the claimant declines treatment to address them.  Valley v. Barnhart, No. 02-338-

M, 2003 WL 22249863, at *5 (D.N.H. Sept. 30, 2003) (failure to comply with physician's

recommendations, including diet and exercise, supports adverse credibility finding); SSR 96-7p,

1996 WL 374186, at *5, *7 (failure to pursue follow-up treatment is pertinent to credibility).

Finally, the ALJ relied on the uniform recommendation of the physicians involved with

Plaintiff's treatment that she was capable of light work or light duty, confirmed by Plaintiff's

own assurance to those providers that she was actively seeking light work.  Tr. 22, Tr. 269 (Dr.

Rafal: she is "weaning back in to work"); Tr. 302-03 (Dr. Fortuna: "patient apparently did not go

back to work because no light duty was available"); Tr. 502 (Dr. Hubbard: "She has also been

trying to see if there is any alternative work available").

The only specific critique Plaintiff makes regarding the ALJ's credibility finding is her

claim that the ALJ misquoted Plaintiff's testimony about her daily activities.  She takes umbrage

with the following finding:

> Daily activities included light chores, laundry, dishes, driving and managing her
> money.  She watched television, listened to music and used the computer.  The
> claimant also reported she had friends and maintained contact with family.

Tr. 21.  This criticism does not withstand scrutiny.  For example, Plaintiff claims that the ALJ's

reference to friends and family is false because she testified only that her mother visits her three

times a week.  This argument overlooks other portions of her testimony in which she stated that

she lives with a roommate, described as her "friend", and that she has a "few friends."  Tr. at 34,

44, 463.  These record references provide ample evidence support for the ALJ's statement that

she "had friends."  Tr. 21.  Similarly, during the hearing, Plaintiff confirmed that she drives,

though "not very far," to "the market or something or CVS," Tr. at 35, supportive of the ALJ's

statement that she is able to drive.  Tr. 21.  Finally, while she testified that she had stopped using

the computer, there is substantial record support for the ALJ's assertion that she "used the computer" in that she told Dr. Unger that she "may also go on the computer." Tr. 463. In short, every one of the ALJ's references to Plaintiff's activities of daily living is amply supported by substantial record evidence. Bourinot v. Colvin, No. 14-40016, 2015 WL 1456183, at *17 (D. Mass. Mar. 30, 2015) (ALJ correctly discounted credibility of plaintiff's testimony regarding fibromyalgia symptoms due to inconsistency with activities and treatment records); Rock v. Astrue, No. CIV.A. 10-10112-GAO, 2013 WL 1292669, at *10 (D. Mass. Mar. 29, 2013) (no error in finding that pain from degenerative joint disease and chronic pain syndrome not credible where claimant had not required hospitalization or surgery, performed household tasks and medical expert opined that sedentary work activity possible).

Based on the foregoing, I find that the ALJ's adverse credibility finding is well grounded in substantial record evidence and properly based on the entirety of the record, including a review of Plaintiff's activities of daily living that is not tainted by any inaccuracy. There is no error.

## VIII.  Conclusion

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Defendant's Final Decision without a Remand for Rehearing or in the Alternative Reverse with a Remand for Rehearing (ECF No. 17) be DENIED and the Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 19) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to

appeal the Court's decision.  <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008);

<u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 9, 2015